The court below erred in its holding that this attachment should be discharged, and for that reason the judgment is reversed.

**Winch** and **Henry, JJ.,** concur.

---

## ASSESSMENTS—SEWERS.

[Lucas (6th) Circuit Court, March 9, 1907.]

Haynes, Parker and Wildman, JJ.

KOHLER BRICK CO. ET AL. V. TOLEDO (CITY) ET AL.

1. NECESSITY OF NOTICE OF SEWER IMPROVEMENT AND ASSESSMENT.

The notice required to be given, to owners of property benefited, of resolutions and proceedings for the construction of a sewer system is not applicable to a case where the council is proceeding to construct a sewer that is a part of a general system that has already been planned, and provided for by proper proceedings.

[For other cases in point, see 1 Cyc. Dig., "Assessments," §§ 196-222; 6 Cyc. Dig., "Municipal Corporation," §§ 1237-1268.—Ed.]

2. METHOD OF ASSESSING PROPERTY FOR PUBLIC IMPROVEMENT.

Where unplatted property abuts on a sewer or other improvement within a municipal corporation, a part of which is not benefited by such improvement, it is within the power of the council to limit the assessment on such property to the extent of the benefits received, by assessing same proportionately to the depth of an ordinary platted lot.

[For other cases in point, see 1 Cyc. Dig., "Assessments," §§ 300-371.—Ed.]

3. NATURE OF ORDINANCE PROVIDING FOR ASSESSMENTS.

An ordinance providing for the assessment of property benefited by sewer improvements is of a special nature, and not within the meaning of Rev. Stat. 1695 (Lan. 1308) which requires the publication of ordinances of a general nature.

[For other cases in point, see 1 Cyc. Dig., "Assessments," §§ 169-195; 6 Cyc. Dig., "Municipal Corporations," §§ 1280-1303.—Ed.]

4. EFFECT OF A BOND ISSUE FOR COST OF IMPROVEMENT.

Where a bond issue is provided for the payment of the whole cost of sewer construction no certificate from the auditor, that funds are on hand to pay for the sewer, is required.

5. SLIGHT CHANGE IN SEWER PLANS NOT OBJECTIONABLE.

Slight changes in an adopted sewer plan will not invalidate the legislation or assessments where the sewer is not rendered less serviceable, or valuable, or more expensive, nor affected in any material manner.

[Syllabus approved by the court.]

INJUNCTION.

**Holbrook & Monsarrat,** for plaintiffs:

Cited and commented upon the following authorities: *Tyler* v. *Columbus,* 3 Circ. Dec. 427 (6 R. 224); *Krumberg* v. *Cincinnati,* 29

Lucas County.

Ohio St. 69; *Caldwell* v. *Carthage*, 49 Ohio St. 347 [31 N. E. Rep. 602]; *Joyce* v. *Barron*, 67 Ohio St. 264 [65 N. E. Rep. 1001]; *Chicago & E. Ry.* v. *Keith*, 67 Ohio St. 279 [65 N. E. Rep. 1020; 60 L. R. A. 525]; *Toledo* v. *Railway*, 2 Circ. Dec. 450 (4 R. 113); *Ayers* v. *Toledo*, 26 O. C. C. 767; *Comstock* v. *Nelsonville*, 61 Ohio St. 288 [56 N. E. Rep. 15]; *Minor* v. *Hamilton* (*Bd. of Cont.*), 11 Circ. Dec. 16 (27 R. 4).

**C. S. Northup**, for defendants.

**PARKER, J.**

This is an action brought to enjoin the collection of assessments made upon the lands of the plaintiff, which appear to be unplatted lands in sewer district No. 36 of the city, for the cost of construction of a sewer therein, designated as "main sewer district 898." The case is submitted upon the pleadings and an agreed statement of facts. It is set forth in the petition, quoting therefrom, that—

"On October 5, 1903, the common council of the city of Toledo adopted a resolution declaring the necessity for constructing a main sewer for main sewer district number thirty-six, city of Toledo, Ohio."

Then the petition further sets forth that the sewer was constructed in pursuance of that resolution. It is claimed that these assessments are invalid and their collection should be enjoined, for various reasons, and the reasons now urged by counsel for the plaintiffs, in brief and in oral argument, I will endeavor to take up and discuss in the order in which they are stated in the brief. I may say that a great many grounds of invalidity set forth in the petition are abandoned or based upon statements of fact that are not supported by any finding, agreement or evidence of such facts.

The first point made against this assessment, and perhaps the one that is most important, and the one which, if well founded, has the most merit in it, is that with respect to an alleged want of statutory notice to parties interested, of certain steps taken in the course of the proceeding. It appears that sewer district No. 36 was established and a plan of sewer and sewage disposal plant therefor was adopted by an ordinance passed and approved in August, 1900, and that when the council came to proceed with respect to this particular sewer, their first step was the adoption of a resolution declaring the necessity for constructing a main sewer and sewage disposal plant for main sewer district No. 36, Toledo, Ohio in accordance with such plan. That resolution discloses the necessity of the sewer and describes it—its dimensions, its length, its course, its outlet, etc.—and says that it is to be constructed for the purpose of disposing of the sewage of said main

Brick Co. v. Toledo.

sewer district No. 36 in accordance with plans, etc., on file in the city engineer's office. It provides:

"That the cost and expense of the sewer and sewage disposal plant shall be levied and assessed upon the lots and lands bounding and abutting thereon and benefited thereby according to benefits accruing therefrom in a sum not to exceed the amount that would, in the opinion of the council, be required to construct an ordinary street sewer or drain of sufficient capacity to drain such lots and lands, and the remainder of the costs and expenses of constructing said sewer and sewage disposal plant, except the amount charged to the municipality and except the amount assessed for local drainage, shall be assessed upon all the real property in sewer district No. 36, in which said main sewer 898 is located, according to benefits—said assessments to be made in five annual installments in accordance with the sections of the Revised Statutes of Ohio applicable thereto."

And it is therein further provided that—

"All persons claiming damages for the foregoing improvements must file their claims thereto with the clerk of council within four weeks after the first publication of this resolution."

Provision was made for the publication of this resolution once a week for four weeks; and such publication appears to have been made.

The next step in the way of legislation was the passage of an ordinance, on January 13, 1904, which is entitled: "An ordinance, No. 46, determining to proceed with the construction of sewer No. 898, and sewage disposal plant for main sewer district No. 36." That ordinance provides for the construction of the sewer, the assessment of the cost, etc., in harmony with the provisions of the resolution; and it also provides for the issuing of the bonds of the city in anticipation of the collection of such part of said assessment as shall remain unpaid after the time prescribed in the assessing ordinance for cash payment, and in an amount equal thereto. It also makes provision for the assessments being paid in cash if the parties liable therefor shall choose so to pay. It provides how the contract shall be paid, how the contract for the work shall be executed, etc. It appears that in the course of the proceedings an assessing committee was appointed that proceeded to make an assessment upon the property abutting upon the streets through which the sewer extended, according to special benefits; and that this committee, in pursuance of legislation by the council, took into consideration so much of the property of the plaintiffs specially benefited by this improvement as fronted upon the streets through

Lucas County.

which the sewer district extended to a fair average depth of the platted lots contiguous to such unplatted lands and that the assessment upon said lands was laid upon such part of the lands only. And then, by an ·ordinance passed on March 27, 1905, these assessments were confirmed, and proper provision was made for their being duly recorded and collected.

In the agreed statement of facts certain other particulars are set forth, to some of which I may make reference in the course of this opinion.

It is contended by the plaintiffs that notice of this preliminary resolution should have been given them, as required by Sec. 52 of the act of the legislature (96 O. L. 40; Lan. 3603; B. 1536-212), called the new municipal code, passed on October 22, 1902, and which took effect on May 4, 1903.

Section 51, 96 O. L. 39 (Lan. 3602; B. 1536-211), provides:

"Whenever it is deemed necessary by any city or village to make any public improvement to be paid for in whole or in part by special assessments, council shall declare by resolution (three-fourths of the whole number elected thereto concurring, except as otherwise provided herein) the necessity of such improvement, and thereupon prepare or cause to be prepared plans, specifications, estimates and profiles of the proposed improvement, showing the grade of the same with reference to the property abutting thereon, which plans, specifications, estimates and profiles shall be filed in the office of the department of public service in cities and in the office of the clerk in villages, and shall be open to the inspection of all persons interested. Not earlier than two weeks after the passage of said resolution, and before any such improvement is begun, council shall by ordinance (three-fourths of the whole number elected thereto concurring) determine the general nature of the improvement, what shall be the grade of the street, alley or other public place to be improved, as well as the grade or elevation of the curbs, and approve the plans, specifications, estimates and profiles for the proposed improvement. Council shall also determine in said ordinance the method of the assessment, the mode of payment therefor and shall declare whether or not bonds shall be issued in anticipation · of the collection of the same."

There are some other provisions which I will not read, the last sentence in that section being:

"Said resolution and ordinance shall be published as required in Sec. 124 of this act."

Brick Co. v. Toledo.

Then Sec. 52, 96 O. L. 40 (Lan. 3603; B. 1536-212) provides:

"A notice of the passage of the ordinance required in the last preceding section shall be served by the clerk of council or an assistant upon the owner of each piece of property to be assessed or upon the persons in whose names the same may be assessed for taxation on the tax duplicate, in the manner provided by law for the service of summons in civil actions; * * *." With some further provisions respecting service of corporations and nonresidents.

. It will be observed that in this case no such ordinance as is provided for in Sec. 51, 96 O. L. 39, was passed by the council—the ordinance which the counsel for the city here before us are in the habit of describing as the "intermediate ordinance"—and that Sec. 52, 96 O. L. 40, does not provide for this personal service of notice of any other legislation than such ordinance; so that, if such ordinance were required, the proceeding is defective, and fatally defective, not only because there was no notice of the ordinance, but because there was no ordinance of which notice could be given.

It is contended on behalf of the city that this provision as to the intermediate ordinance and as to the service of notice thereof, does not apply in a case like this where the council is proceeding to construct a sewer which is a part of a system which has already been planned and provided for by proper legislation in pursuance of Secs. 77, 78, 79, 80, 81, 96 O. L. 47, 48 (Lan. 3632 et seq.; B. 1536-240 et seq.), and perhaps some of the following sections of this same statute upon that subject; and so, disregarding the provisions of Secs. 51 and 52, 96 O. L. 39, 40, the council proceeded under Sec. 84, 96 O. L. 48 (Lan. 3639; B. 1536-247), and adopted the resolution.

Section 84 reads:

"When it is deemed necessary by a city or village to construct all or a part of the sewers provided for in said plan, the council shall declare by resolution the necessity of such improvement. Said resolution shall contain a declaration of the necessity of said improvement, a statement of the district or districts or parts thereof proposed to be constructed, the character of the materials to be used, a reference to the plans and specifications, where the same are on file, and the mode of payment therefor, and the council shall cause the resolution to be published once a week for not less than two nor more than four consecutive weeks in one newspaper of general circulation in the corporation."

We are of the opinion that these special provisions with respect to the construction of sewers in pursuance of a plan and appropriate

legislation. already adopted control the council and are independent of the provisions of Secs. 51 and 52, 96 O. L. 39, 40.

We had before us, recently, in Wood county, a question very much like this, with respect to sidewalks, coming under the same subdivision of this part of the statute defining the powers of municipalities. The case was that of *Westenhaver* v. *Hoytsville* (*Vil.*), 28 O. C. 357. It will be observed, on looking into the statutes, that a mode of procedure with reference to the construction of sidewalks, as well as other improvements, is provided for by Secs. 50, 51, 52, 96 O. L. 39, 40, and some following sections; but a more summary method of procedure is provided for by Secs. 70, 71, 96 O. L. 45, and some of the following sections; and we held that in proceeding under Sec. 70 *et seq.*, the council were not required to observe the formalities provided where the system or method described in Sec. 50 *et seq.*, was pursued; we held that—

"A special ordinance for the construction of a specific sidewalk is not required, where a general ordinance for the construction of sidewalks has been theretofore enacted."

This case is analogous. If the council were proceeding here to construct a sewer not before provided for by legislation, and not before planned, it would doubtless be necessary to pursue the course marked out in Secs. 51 and 52, 96 O. L. 39, 40; but where they are proceeding in pursuance of a plan already adopted, we think that is not necessary. That had been the law of the state up to the time of the adoption of this act of October 22, 1902, and it was expressly provided, in original Rev. Stat. 2304 (see Lan. 3603; B. 1536-212), that in the case of sewers, the twenty days written notice to the owners of the abutting property or to the persons in whose names the abutting property is assessed, was not required; and it is not apparent to us that in respect to these matters, the legislature designed to make any radical change in the law; the general scheme appears to be the same. There are some transpositions of the provisions, and different arrangements of sections, and the omission of some language that, doubtless, appeared to the legislature to be verbiage, and this particular provision respecting notice found in Rev. Stat. 2304 (see Lan. 3603; B. 1536-212) was omitted from the new municipal code: but we think such omission effected no change in the law.

By an act passed on April 19, 1904 (97 O. L. 121), entitled "An act to amend Sec. 51" and a number of other sections of this new municipal code, including Sec. 60 (Lan. 3611; B. 1536-220), we observe that this provision was added to Sec. 60, which appears on page 123:

Brick Co. v. Toledo.

"In the case of construction of sewers hereafter, excepting main or district sewers, notice of the passage of the resolution therefor, as provided in Sec. 84 of the act of which this is amendatory shall be made in the manner provided in Sec. 52 of said act as amended herein."

In other words, thereafter personal service of notice of the resolution should be given. Counsel for plaintiff, in his brief, asks:

"Is it not a fair argument that the legislature thereby declared that original Sec. 52 as passed was intended to mean just what it said, and is, therefore, broad enough to include sewers and all special assessments where materials are used, and, for reasons of their own, no notice should thereafter be given in case of a main sewer?"

But I have already pointed out that what Sec. 52, 96 O. L. 40, provided for was service of notice, not of the resolution, but of a certain ordinance of a certain character which was not passed in this case, and which we hold was not required. So that this amendment of Sec 60 cannot be regarded as declaratory of the meaning of Sec. 52, 96 O. L. 40, as it originally stood; *i. e.*, that it should apply to the resolution provided for by Sec. 84, 96 O. L. 48; but this amendment provides for a new thing—it makes a new requirement—and that is, that personal service of the notice of the resolution provided for in Sec. 84 shall be made. And even now the provision is made to extend only to local sewers. Main sewers are expressly excepted from the operation of the provision; and this sewer, according to the averments of the petition, as well as by the agreed statement of facts, was a main sewer, notwithstanding the fact that it did not provide for the conveying away of any storm water or water from the streets; it was distinctively and exclusively a sanitary sewer, and yet to all intents and purposes a main sewer.

Our attention is called to the case of *Chicago & E. Ry.* v. *Keith*, 67 Ohio St. 279 [65 N. E. Rep. 1020; 60 L. R. A. 525], wherein it is held that the law providing for assessments will be invalid unless it provides for notice to the property owner whose property is to be assessed, somewhere along the line of the proceedings, so that he may have an opportunity to come in and make objections. But it does not require that the notice shall be personal. This legislation of the council, and the law under which it was passed, provide for notice at several stages of the proceeding. The legislation was published; there was opportunity for hearing upon the original legislation with respect to the formation of the district and the plan of the sewers and sewage disposal

therefor, and notice was given of the assessment which had been made and which was on file.

Secondly, objection is made because the council provided for the assessing of only a part of these unplatted lands; to wit, the part abutting upon the street where the sewer was laid, to a depth equal to the average depth of the platted lots in that vicinity. It is said that there was no authority for thus limiting the assessment to a part of these unplatted lands.

The statute formerly provided, in original Rev. Stat. 2379 (see Lan. 3640; B. 1536-248), that:

"The council shall provide for assessing the cost and expenses of constructing main sewers, upon the lots and lands bounding or abutting upon the streets, lanes, alleys, highways, market spaces, public landings, and commons, in or along which the same shall pass, by the feet front, or according to the valuation of the same on the tax list, or according to benefits, as it shall determine."

And it is said that in the new municipal code no provision can be found corresponding with that, authorizing the laying of assessments upon the abutting property according to benefits, this original Rev. Stat. 2379 (see Lan. 3640; B. 1536-248) being repealed by the act which I call the new municipal code.

The authority for levying the assessments is found in Sec. 50, 96 O. L. 39 (Lan. 3600; B. 1536-210), which then read:

"The council of any municipal corporation may assess upon the abutting, adjacent and contiguous or other specially benefited lots or lands in the corporation, any part of the entire cost of, and expense connected with, the improvement of any street, alley or public road or place by paving, repaving, repairing, constructing sidewalks, sewers, drains or water courses and any part of the cost of lighting, sprinkling, sweeping, cleaning, or planting shade trees upon the same, by either of the following methods:

"First. By a percentage of the tax value of the property assessed.

"Second. In proportion to the benefits which may result from the improvement, or

"Third. By the foot frontage of the property bounding and abutting upon the improvement."

And then the limitations as to the assessments, substantially as they existed theretofore, are to be found in Sec. 53, 96 O. L. 40. There is in Sec. 50 authority for assessing according to benefits upon abutting

Brick Co. v. Toledo.

property. But let me go further in stating the plaintiff's position. His contention is, that the whole of this unplatted land should be considered as abutting property, and that there is no authority for limiting the lien of the assessment to this strip of land abutting upon the street where the sewer was laid. It was formerly provided, in original Rev. Stat. 2269 (see Lan. 3604; B. 1536-213), as follows:

"In making special assessments according to valuation, the council shall be governed by the assessed value of the lots, if the land is subdivided and the lots are numbered and recorded; but if the lots are not assessed for taxation, or if there is land not subdivided into lots, the council shall fix the value of the lots or the value of the front of such land to the usual depth of lots, by the average of two blocks, one of which shall be next adjoining on either side; * * *."

But the last provision of that section is: "And this section shall be applicable to special assessments provided for in this chapter, excepting assessments according to benefits."

So that it is not apparent that there was ever a provision for thus limiting the scope of the lien of special assessments, where they were laid according to benefits, and there seems to be no particular reason why there should be such limitation in those cases. We are of the opinion that where it would be proper—where it would be just to the owner of the unplatted land to thus limit the scope of the lien, it is within the power of the council to do it, without any special provision upon the subject; and it seems to us that in a case like this, the lands extending a great distance from the street where the sewer was laid, when the council came to provide for the levying of an assessment upon the abutting property according to benefits, it would have been very wrong and very unjust to the owner of the property to have considered its full depth and allowed the assessment to be spread over the whole extent of the territory. One might own farm lands extending back from the sewer so that the rear part, or all except the very front part of the lands, would be without the local benefits contemplated or on account of which a special assessment might be levied. It is apparent that in a sanitary sewer of this description the only property that would be specially benefited would be the property lying immediately adjacent to the street where the sewer was laid; and it would seem to be not only proper but just, but a thing that should be required of the council, that in considering the levy for this improvement it should take into consideration the depth of ordinary building lots upon which houses might be built which could have access to this

sanitary sewer for the purposes of such sewer. If the assessment had been levied without this restrictive limitation we think the plaintiff's lands might have been bound by it; but, in the absence of a showing that they are prejudiced in any way by the course pursued by the council, we are of the opinion that they have no footing in a court of equity; and no express statutory provision upon the subject seems to have been violated or disregarded.

Complaint is made that the cost of intersections was levied upon the abutting property and was not paid by the city. It is conceded, as we understand it, by the city, that this was a mistake; that the amount of such costs, to wit $1,314.60, and that a ratable proportion thereof should be deducted from the assessments charged against the plaintiff's.

It is said that the assessment ordinance was not published as required by Rev. Stat. 1695 (Lan. 3108; B. 1536-621); that is to say, that it was not all of it published. The assessment ordinance refers to the report of the assessors in these words:

"And the council further find and hereby further declare that the lots and lands assessed to pay the cost of said improvement are benefited thereby in proportion to the amounts assessed against the same respectively, by said committee, and that said assessment so reported by said committee upon each lot or parcel of land does not exceed its proportion of such special benefits and there is hereby assessed and levied upon the several lots and lands described in said report the amount therein set forth, for each of the several years therein named, as shown by the schedule of assessments hereto attached signed by said committee, and dated December 27, 1904."

It is urged that thereby the report was made a part of the ordinance and should have been published with it. It appears that that was not done. But we are of the opinion that it was not necessary to publish this ordinance at all; so that we need not pass upon the question whether the schedule was made a part of the ordinance so that in case the publication of any part of it was required, the schedule should be published with it.

Revised Statute 1695 (Lan. 3108; B. 1536-621) requires that—

"Ordinances of a general nature or providing for improvements shall be published in some newspaper of general circulation in the corporation; * * *."

This ordinance was not an ordinance providing for an improvement; the improvement had been provided for; and it was not an ordinance of a general nature, but was of a special nature.

### Brick Co. v. Toledo.

It is said that there was no certificate from the auditor of funds on hand to pay for this sewer, as required by Sec. 45, 96 O. L. 37 (Lan. 3999; B. 1536-205), as now found in the statutes. The ordinance provided for the issuing of bonds for the payment of the whole cost, and, under the authority of *Emmert* v. *Elyria,* 74 Ohio St. 185, we hold that no certificate from the auditor was required.

We are not required to meet or decide the question which is suggested, to wit, as to whether this point touching the validity of the contract could be raised in this way after the work is all done and paid for.

It is said that there was some change in the plans—that is, in the length and dimensions of the sewer—a change from the plans originally adopted. It is not pointed out to us that this change was in any way material; that it rendered the sewer less serviceable or valuable, or more expensive, or that the change worked to the prejudice of the plaintiffs in any respect whatever; and we are of the opinion that the slight changes indicated could not invalidate the legislation nor assessments. It follows that our decree will be the same as the decree entered in the court of common pleas in this case. The parties are relieved from the expense of $10, the cost of improperly advertising the assessment ordinance. The costs of the appeal will be adjudged against the plaintiffs.

**Haynes** and **Wildman, JJ.,** concur.